UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN EDWARD CHILDERS, and ANTHONY PITTS<br>    Plaintiffs, | CIVIL ACTION NO. 3:21-cv-89 |
| v. | JUDGE _____ |
| STATE OF LOUISIANA, THROUGH DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS OFFICE OF STATE POLICE<br>    Defendant. | MAG. JUDGE _____ |

**COMPLAINT**

**NOW INTO COURT**, through his undersigned counsel, come the Plaintiffs, John Edward Childers and Anthony Pitts who respectfully represent as follows:

**JURISDICTION AND VENUE ALLEGATIONS**

1.

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. § 1331. This is an action for damages arising out Defendants' violations of Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e-2 *et seq.* Plaintiffs assert that they were denied opportunities for promotions because of their race. Plaintiff Anthony Pitts also asserts that he was denied promotional opportunities in retaliation for complaining to his supervisor about being denied the two (2) promotions to the rank of Major in Regions 2 and 3 in July of 2018 because of his race, and for submitting an EEOC Charge of Discrimination alleging employment discrimination because of his race.

2.

Venue is appropriate in the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1391(a) because the events giving rise to this action occurred in this judicial district and Defendant State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police, a political subdivision of the State of Louisiana, which is domiciled in this judicial district.

**PARTIES**

3.

Plaintiff, John Edward Childers ("Mr. Childers") is a person of the full age of majority and a resident of East Baton Rouge Parish, State of Louisiana. Mr. Childers was formerly employed by the State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police.

4.

Plaintiff, Anthony Pitts ("Mr. Pitts") is a person of the full age of majority, and a resident of St. Landry Parish, State of Louisiana. Mr. Pitts was formerly employed by State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police.

5.

Named Defendant herein is State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police ("LSP"), a political subdivision of the State of Louisiana, with its principal business establishment in Louisiana located in East Baton Rouge Parish.

# INTRODUCTION

6.

The Plaintiffs' federal claims are brought herein pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*

7.

Mr. Childers and Mr. Pitts, are black and thus belong to a protected class.

8.

Throughout their careers as employees of LSP, Mr. Childers, Mr. Pitts and numerous other similarly situated black and minority employees have been denied promotional opportunities by LSP to various positions for which they have applied.

9.

Much lower ranked and lesser qualified white LSP employees have been routinely selected for LSP promotions over higher ranked and more qualified black and minority LSP employees.

10.

Numerous qualified black and minority LSP employees in the past several years have applied for promotions, and been denied these promotions, frequently with LSP providing them little or no reasons for these promotion denials.

11.

Additionally, numerous black and minority LSP employees who have applied and were denied promotions, were given overly subjective evaluations during the promotion process.

12.

LSP's promotion policies are neither job-related, nor consistent with business necessity.

13.

As a result, LSP's promotion policies have had a disparate impact on black and minority LSP employees, as black and minority LSP employees have been systematically denied promotions at a disproportionate rate in comparison to white LSP employees.

## PROCEDURAL PREREQUISITES

14.

Throughout his employment, Mr. Childers was a good and diligent employee and served the needs of his employer to the best of his abilities. Mr. Childers was a Master Trooper with LSP, in good standing, who retired from LSP on May 15, 2020.

15.

On May 14, 2019, Mr. Childers filed an EEOC Charge of Discrimination, charge number 461-2019-01127, asserting violations based on race discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

16.

Throughout his employment, Mr. Pitts was a good and diligent employee and served the needs of his employer to the best of his abilities. Mr. Pitts was a Captain in the Recruiting and Public Affairs Division, in good standing, who retired from LSP on February 15, 2019.

17.

On April 2, 2019, Mr. Pitts filed an EEOC Charge of Discrimination, charge number 461-2019-01128, asserting violations based on race discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

18.

Mr. Childers and Mr. Pitts each received right to sue letters dated November 12, 2020 from the United States Department of Justice, Civil Rights Division regarding their claims of race discrimination and retaliation as set forth in their respective EEOC charges, numbers 461-2019-01127 and 461-2019-01128.

19.

This complaint is being filed within ninety (90) days of receipt of the EEOC notice of right to sue letters, and all promotion applications and denials about which Plaintiffs complain of herein occurred within three-hundred (300) days prior to the date when Plaintiffs filed their EEOC Charges of Discrimination. Thus, Plaintiffs' complaint is timely.

### FACTUAL ALLEGATIONS

20.

On March 8, 1992, Mr. Childers commenced full-time employment with LSP as a Cadet. Thereafter, he worked his way up through the ranks within LSP to the position of Master Trooper.

21.

Throughout Mr. Childers and Mr. Pitts' decades long careers in law enforcement with Defendant, Plaintiffs have been victims of employment discrimination and have observed that Black Troopers receive harsher discipline and are denied more promotions, than white Troopers.

22.

To obtain a promotion from to a position of a Sergeant with LSP, applicants first have to obtain five (5) years of experience as a Trooper, take an examination, and score within the top

five (5) of all applicants for the position.[1] The LSP Director of the LSP Commission then issues a certificate of eligibles naming these top five (5) applicants, and those applicants are given an interview for the position. Promotions to the position of Major essentially follow the same process, except that applicants are not required to take any examination. Promotions to the rank of Major require completion of two (2) years as an LSP Captain, and the applicant must then timely submit an Availability form.[2]

23.

A key component to being selected for LSP promotions is law enforcement experience.

24.

On about September 19, 2001, Mr. Childers was promoted to the position of Sergeant in the Indian Gaming Section of LSP.

25.

On about August 14, 2006, Mr. Childers was demoted from a Sergeant to a Master Trooper and was transferred to the Detectives Division within the Bureau of Investigation because he was allegedly involved in an inappropriate relationship with a casino employee during business hours, and as he allegedly falsely claimed that he was working when he was not.

26.

After Mr. Childers worked in the Detectives Division for about two (2) weeks, he requested, and was granted, a transfer to Troop I.

27.

On about July 27, 2018 Mr. Childers applied for a Sergeant position in TESS- Weight Enforcement. Two (2) other black LSP employees also applied for this position.

---

[1] Subsequent to the date of Plaintiffs' retirement from employment with LSP, this policy was revised to apply to the top seven (7) scoring applicants for the position.
[2] These requirements come from LSP's response to Mr. Pitts' EEOC charge p. 5

28.

On about September 5, 2018, white LSP employee, Jarrett Dodson, was promoted to this position. Upon information and belief, Mr. Dobson was less qualified than Mr. Childers as Mr. Dodson had twenty (20) years and one (1) month of law enforcement experience and had earned some college credits at McNeese University. In contrast, Mr. Childers had twenty-five (25) years and five (5) months of law enforcement experience at LSP and had completed significantly more college credits at Louisiana State University in criminal justice.

29.

On about October 25, 2018 Mr. Childers applied for a Sergeant position in the Patrol Division of Troop I and on about November 27, 2018 Mr. Childers applied for a second Sergeant position within that same division.

30.

On about December 6, 2018, white LSP employees Donald McFarlin and Scott Verret, who upon information and belief were less qualified than Mr. Childers, were selected for these two (2) promotions. Mr. McFarlin had twenty-two (22) years and eleven (11) months of law enforcement experience. Mr. Verret had twenty (20) years and four (4) months of law enforcement experience. In contrast, Mr. Childers had twenty-six (26) years and eight (8) months of law enforcement experience at LSP.

31.

On about December 11, 2018 Childers applied for a Sergeant position in Troop C, Patrol Division. On about January 8, 2019, white LSP employee Josh Van Etta, who upon information and belief was less qualified than Childers, was selected for this position. Mr. Van Etta had twenty (20) years and six (6) months of law enforcement experience, and no college credits. In

contrast, Mr. Childers had twenty-six (26) years and ten (10) months of law enforcement experience at LSP, and had earned a significant number of college credits at Louisiana State University in criminal justice.

32.

On about January 30, 2019 Mr. Childers applied for a Sergeant position in the Baton Rouge/EBR Public Affairs Division. On about February 20, 2019, white LSP employee Melissa Matey, who upon information and belief was less qualified than Mr. Childers, was selected for this promotion. Ms. Matey, at the time of her promotion, had twelve (12) years and eleven (11) months of law enforcement experience, while Mr. Childers had twenty-six (26) years and eleven (11) months of law enforcement experience at LSP.

33.

The opportunity to work in these five (5) Sergeant positions, for which Mr. Childers was denied, would have increased his annual income from $94,748.53 to $104,687.13 and the position of Sergeant is more prestigious, and would have led to an increase in Mr. Childers' enjoyment of life. However, Mr. Childers was denied these promotional opportunities.

34.

Each time Mr. Childers was denied these five (5) Sergeant promotions, he was given pretextual reasons for why he was not chosen for these positions. However, during the time that he was denied these promotion opportunities, similarly situated white employees were receiving those promotions, and in addition to being lesser qualified than Mr. Childers, some of those employees had significant disciplinary histories, and/or had fewer years of law enforcement experience than Mr. Childers.

35.

When Mr. Childers was notified that he was not selected for the fifth promotion, it was the *twenty-fourth time* he had been denied a promotion since he was demoted from Sergeant to Master Trooper on August 14, 2006.

36.

After being denied these five (5) promotions, Mr. Childers spoke with Capt. Wayne Vidrine, the Troop I commander at the time (now Major Vidrine). Capt. Vidrine informed Mr. Childers that he was denied these promotions because he was on the "*Brady* list," and could not get promoted unless he applied for a "forward leaning position."

37.

According to Capt. Vidrine, a "forward leaning" position was one in which Mr. Childers would not be called to testify in a criminal matter on behalf of the prosecution and/or a position where he would not be required to process evidence.

38.

LSP has contended that Mr. Childers was included on LSP's "*Brady* list" and/or was a "*Brady* cop," because Mr. Childers had allegedly violated certain LSP policies. LSP has contended that Mr. Childers' prior disciplinary history would be required to be disclosed to any prosecutor in cases wherein Mr. Childers was asked to testify pursuant to *Brady* v. *Maryland,* 373 U.S. 83 (1963) as his disciplinary history could implicate his credibility and reliability as a witness regarding evidence submitted by the State.

39.

However, upon information and belief, when Lt. John Cannon (white) held the rank of trooper, he was disciplined at least once for having sexual intercourse with a woman in the

backseat of his patrol car and was also involved in the theft of internet or cable services. Unlike Mr. Childers, Lt. Cannon's discipline did not include a demotion.

40.

Upon information and belief, Lt. Jude Matthews (white) was disciplined for the same and/or similar infractions as that of Mr. Childers, yet Lt. Matthews was promoted.

41.

Upon information and belief, when Lt. Shannon Lavergne (white) held the rank of trooper, he was arrested for driving while intoxicated. Lt. Lavergne was promoted two (2) times until he reached the rank of Lieutenant.

42.

Upon information and belief, when Lt. Lanny Bergeron (white) held the rank of Trooper, he was arrested for domestic battery. Lt. Bergeron was nevertheless promoted two (2) times until he reached the rank of Lieutenant.

43.

Upon information and belief, when Sgt. Travis Colombel (white) held the rank of trooper, he was arrested on March 2, 2010 for malfeasance in office. Sgt. Colombel was nevertheless promoted on October 18, 2018 to the rank of Sergeant at Troop C in Gary, Louisiana.

44.

However, Mr. Childers, has never been arrested, and did not have disciplinary histories as extensive as Lt. Jude Matthews, Lt. Shannon Lavergne, Lt. Lanny Bergeron and Sgt. Travis Colombel. Nevertheless, Mr. Childers was denied twenty-four (24) promotions.

45.

Mr. Childers was never advised by anyone at LSP about being placed on this purported "*Brady* list" until he spoke to Capt. Vidrine around 2019.

46.

Mr. Childers' placement on this "Brady list" was used as a device to deny him promotions for fourteen (14) years.

47.

Mr. Pitts began full time employment with LSP in 1990 as a State Police Cadet, and worked his way up through the ranks of LSP to Captain in the Recruiting and Public Affairs Division, and retired from this position with LSP on February 15, 2019.

48.

On about July 9, 2018 and July 12, 2018, as Mr. Pitts had completed at least three (3) years in the rank of Captain, he applied for two (2) promotions for the position of Major by timely submitting his availability form.

49.

One position Mr. Pitts applied for was within LSP Region 2 and the other was within LSP Region 3. On about July 25, 2018 Pitts was notified that he was not selected for these positions.

50.

On information and belief, two (2) less qualified white LSP employees were selected for these positions: Darrin Naquin and Wayne Vidrine. At the time of Mr. Pitts' application, he had obtained sixteen (16) years of supervisory experience in the Patrol Division of LSP, had graduated from the Northwestern University Center for Public Safety, Staff and Command

11

School in 2009 with stellar grades, and had an exemplary personnel file. It is believed that Major Vidrine had not attended any such schools at that time. It is further believed that Major Darrin Naquin (now retired), was once the Captain/Commander of Troop C and was subsequently involuntarily transferred to Troop N as the Commander for disciplinary reasons.

51.

On about August 1, 2018 Mr. Pitts applied for a third position, this time for the position of Major within the Gaming Division in LSP Region 1 within the Bureau of Investigations Division. About four other persons (all white males) also applied. Mr. Pitts had been previously assigned to a temporary detail in the Gaming Division sometime between 1995 and 2000.

52.

On about August 23, 2018 Mr. Pitts was notified that he was not selected for this third Major position. On information and belief, a less qualified White LSP employee was selected: Charles McNeal.

53.

The opportunity to work in these three (3) Major positions, for which Mr. Pitts was denied, would have increased his annual income from $131,672.00 to $140,890.00, and the position of Major is a more prestigious position, which would have led to an increase in Mr. Pitts enjoyment of life. However, Mr. Pitts was denied these promotional opportunities.

54.

Each time Mr. Pitts was denied these promotions, similarly situated white employees were receiving these promotions. In addition to being lesser qualified than Mr. Pitts, some of these employees had significant disciplinary histories, and/or fewer years of law enforcement experience than Mr. Pitts.

55.

After Mr. Pitts filed his EEOC Charge of Discrimination, he overheard Trooper Thurman Miller (black male) state that he was being "blackballed" from consideration of any promotions.

56.

On another occasion, Captain Greg Graphia attempted to obtain an office at the LSP headquarters in Baton Rouge on Mr. Pitts' behalf. Mr. Pitts was denied relocation to a vacant office at the LSP Baton Rouge Headquarters. However, a white male who later replaced Mr. Pitts was given this vacant office.

57.

Defendant failed to implement and enforce an effective policy or training regarding racial discrimination, and reprisal/retaliation in the workplace in selecting LSP employees for promotions and in disciplining black and minority LSP employees.

## MR. CHILDERS' TITLE VII CAUSE OF ACTION:

58.

Mr. Childers reasserts the allegations of paragraphs 1-57 in support of his claims for monetary damages against the Defendant for violations of 42 U.S.C. § 2000e-2 *et seq*.

### Discriminatory Denial of Opportunity to work as a Sergeant

59.

At all times relevant hereto, Mr. Childers, a black person, was a qualified Trooper who was qualified and capable of performing the duties of the five (5) open Sergeant positions at LSP.

60.

Mr. Childers applied for the five (5) open positions of Sergeant within the LSP. However, Mr. Childers was denied, for false and pretextual reasons, the opportunity to work in any of these five (5) open Sergeant positions at LSP while similarly situated white employees were hired for these positions.

61.

This denial of five (5) opportunities to work as a Sergeant was an adverse employment action since the Sergeant positions is a career position, which is more prestigious, and because if Mr. Childers was hired to any one of these Sergeant positions, it would have increased his annual income from $94,748.53 to $104,687.13

62.

Mr. Childers' race was a causative factor in the Defendant's denial of the five (5) promotions to open Sergeant positions.

## MR. PITTS' TITLE VII CAUSES OF ACTION:

63.

Mr. Pitts reasserts the allegations of paragraphs 1-62 in support of his claims for monetary damages against the Defendant for violations of 42 U.S.C. § 2000e-2 *et seq*.

### Discriminatory Denial of Opportunity to work as a Major

64.

At all times relevant hereto, Mr. Pitts, a Black person, was a qualified Trooper who was qualified and capable of performing the duties of the three (3) open Major positions at LSP.

65.

The denial of these three (3) promotional opportunities to work as a Major were adverse employment actions, since the Major position is a career position, which is more prestigious, and it would have increased Mr. Pitts' annual income from $131,672.00 to $140,890.00.

66.

Mr. Pitts' race, Black, was a causative factor in the Defendant's denial of the three (3) promotions to Major positions.

**Retaliation**

67.

Mr. Pitts' denial of the three (3) Major positions was in retaliation for him complaining to his supervisor for being discriminatorily denied the two (2) promotions to the rank of Major in Regions 2 and 3 in July of 2018, and for submitting a Charge of Discrimination to the EEOC.

**DAMAGES**

68.

Because of this discriminatory treatment by Defendant, Mr. Childers and Mr. Pitts have suffered wage losses, loss of fringe benefits, and mental and emotional distress, humiliation and embarrassment, and loss of enjoyment of life.

69.

Mr. Childers and Mr. Pitts have also had to retain the services of attorneys as a result of their discriminatory treatment, and are entitled to recover their attorneys' fees, witness fees, and court costs they have already incurred and that they will continue to incur as this cause proceeds.

## JURY DEMAND

70.

The Plaintiffs respectfully demand trial by jury on all issues triable by jury.

**WHEREFORE**, the Plaintiffs, John Edward Childers and Anthony Pitts, respectfully pray for judgment in their favor and against the Defendant, State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police, for such sums as are reasonable in the premises, with all costs, and legal interest thereon from the date of judicial demand, until paid, and reasonable attorney's fees and litigation expenses.

Respectfully submitted:

 /s/ J. Arthur Smith, III
J. ARTHUR SMITH, III, TA (#07730)
J. ARTHUR SMITH, IV (#37310)
**SMITH LAW FIRM**
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
Email: jasmith@jarthursmith.com
asmithiv@jarthursmith.com