**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**JOHN EDWARD CHILDERS, ET AL.**

                                            **CIVIL ACTION**

**VERSUS**

                                            **NO. 21-89-JWD-EWD**

**STATE OF LOUISIANA, THROUGH**
**DEPARTMENT OF PUBLIC SAFETY AND**
**CORRECTIONS, OFFICE OF STATE POLICE**

**<u>RULING AND ORDER</u>**

Pending before the Court is the *Motion for Summary Judgment* (Doc. 92), filed by Defendant State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police ("Defendant" or "LSP"). Defendant also filed a *Memorandum in Support of Defendant's Motion for Summary Judgment* ("*Def. Memo*") (Doc. 93-3) and exhibits and statements of fact (Doc. 94). Plaintiffs John Edward Childers ("Plaintiff Childers") and Anthony Pitts ("Plaintiff Pitts") (collectively, "Plaintiffs") filed *Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment* ("*Pls. Opp.*") (Doc. 108), as well as *Plaintiffs' Response to Defendant, Louisiana Department of Public Safety and Corrections, Office of State Police's Statement of Material Facts in Support of Motion for Summary Judgment* ("*Plaintiffs' Response*") (Doc. 111), and *Plaintiffs' Supplemental Response to Defendant, Louisiana Department of Public Safety and Corrections, Office of State Police's Statement of Material Facts in Support of Motion for Summary Judgment* ("*Plaintiffs' Supp. Response*") (Doc. 114). Defendant then filed *Defendant's Reply Memorandum in Support of Motion for Summary Judgment* ("*Defendant's Reply*") (Doc. 119). Plaintiffs additionally filed *Plaintiffs' Sur-Reply Memorandum in Opposition to Motion for Summary Judgment* ("*Plaintiffs' Sur-Reply*") (Doc. 120-2). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments

1

and submissions of the parties and is prepared to rule. For the following reasons, the Court will grant Defendant's *Motion for Summary Judgment*.

## I.    BACKGROUND

The parties agree on many of the relevant facts. This matter stems from the failure of Defendant LSP to promote Plaintiff Childers to the position of sergeant and Plaintiff Pitts to the position of major.

Plaintiff Pitts applied to the position of major over Regions 2 and 3 in July of 2018 and interviewed for those positions simultaneously. (Doc. 94-25 at ¶¶ 83–85; Doc. 108 at 8–9.) He was not selected for either of these positions. (Doc. 94-25 at ¶¶ 96–97; Doc. 108 at 8–9.) Instead, two White candidates were promoted. (Doc. 94-25 at ¶¶ 96–97; Doc. 108 at 8–9.) Plaintiff Pitts also applied for the position of major over Gaming in August of 2018. (Doc. 94-25 at ¶ 102; Doc. 108 at 9.) He was again not selected, and a White candidate was selected instead. (*Id.* at ¶¶ 113–14; Doc. 108 at 9.) Pitts then retired in January of 2019, referencing overhearing another Black trooper stating that Pitts had been blackballed from promotions. (Doc. 94-25 at ¶ 120.)

In addition, Plaintiff Pitts claims that he had a conversation with one of the members of the promotional panel prior to interviewing for any promotions, in which Pitts stated that he wanted a fair opportunity for promotion. (*Id.* at ¶ 140.) He also asserts that he spoke to then-State Representative Troy Carter "about a lack of minority LSP employees being promoted" in late May or early June of 2018, prior to applying to any promotions. (Doc. 108-12 at ¶¶ 17–18.)

Plaintiff Childers has applied for approximately twenty-five promotions[1] since 2006, when he was demoted from sergeant to Master Trooper. (Doc. 94-25 at ¶¶ 151, 156; Doc. 108 at 2.)

---

[1] There are some inconsistencies about the number of promotions Plaintiff Childers alleges he was denied. In the amended Complaint, which Defendant cites here, Plaintiff Childers alleges twenty-four denied promotions. (Doc. 49 at ¶ 68.) In *Plaintiffs' Opposition*, Plaintiff Childers alleges he was denied twenty-six promotions to the position of sergeant. (Doc. 108 at 2.)

Childers was demoted in 2006 following a series of incidents in October and November of 2005, including receiving pay for hours not worked due to repeated absences, preparing and submitting a false time sheet, making false statements to his supervising officer, transporting unauthorized passengers (including his children) in his patrol unit, and conducting an illicit affair with an employee of an entity he oversaw as a gaming official. (Doc. 94-25 at ¶ 158.) In addition, Childers had been disciplined for violating LSP policy after his then-wife obtained a restraining order against him for behavior that Internal Affairs ("IA") found was not in conformance with the law in 2003, (*id.* at ¶ 160); for rear-ending another vehicle while off-duty in his patrol unit in 2007, (*id.* at ¶ 161); and for again violating LSP policy by obtaining an expunged police report during a custody dispute in violation of Louisiana law, (*id.* at ¶ 162).

Plaintiff Childers applied for the position of sergeant of TESS-Weight Enforcement in August of 2018; he was not promoted, and a White candidate was promoted. (*Id.* at ¶¶ 168, 182–84; Doc. 108 at 6.) Plaintiff Childers applied for two vacant sergeant positions in Troop I in November of 2018. (Doc. 94-25 at ¶¶ 188–91; Doc. 108 at 6–7.) He again was not promoted, and two White candidates were promoted. (Doc. 94-25 at ¶¶ 196, 204–05; Doc. 108 at 6–7.) Plaintiff Childers applied for the position of sergeant of Troop C in December of 2018. (Doc. 94-25 at ¶ 211; Doc. 108 at 7.) He was not promoted, and a White candidate was promoted. (Doc. 94-25 at ¶¶ 216, 218–221; Doc. 108 at 7.) Finally, Plaintiff Childers applied for the position of sergeant at Public Affairs in February of 2019. (Doc. 94-25 at ¶ 226; Doc. 108 at 7.) He was again not promoted, and a White candidate was promoted. (Doc. 94-25 at ¶¶ 228, 232, 236; Doc. 108 at 7.) Plaintiff Childers retired on May 15, 2020. (Doc. 94-25 at ¶ 153.)

Plaintiffs filed this lawsuit on February 10, 2021, alleging claiming racial discrimination in violation of Title VII on behalf of both Plaintiffs and retaliation in violation of Title VII on

behalf of Plaintiff Pitts. (Doc. 1.) They amended their complaint on December 14, 2021, to add the Louisiana State Police Commission ("LSPC") and to allege disparate impact in the employment process. (Doc. 38.) Plaintiffs filed a second amended complaint on March 14, 2022. (Doc. 49.) Plaintiffs then voluntarily dismissed their disparate impact claim in October of 2022. (Doc. 75.) Plaintiffs also voluntarily dismissed LSPC as a defendant in January of 2023. (Docs. 83, 84.)

## II.  PARTIES' ARGUMENTS

### A.  Defendant's *Motion for Summary Judgment* (Doc. 92) and *Memorandum in Support of Defendant's Motion for Summary Judgment* (Doc. 93-3)

In Defendant's *Motion for Summary Judgment* (Doc. 92) and *Memorandum in Support of Defendant's Motion for Summary Judgment* (Doc. 93-3) (collectively, "*Def. MSJ*"), Defendant argues that it is entitled to summary judgment because Plaintiffs' *Second Amended and Supplemental Complaint* (Doc. 49) ("*Complaint*") presents no genuine issues of material fact. (Doc. 93-3 at 2.)

Defendant argues first that Plaintiff Pitts' claim that LSP denied him "a promotion to the major position over Region 2, Region 3, and Gaming[]" fails as a matter of law. (*Id.* at 4.) Defendant asserts that Plaintiff Pitts has presented no direct evidence of racial discrimination, and the Court must therefore apply the *McDonnell Douglas* burden-shifting framework. (*Id.* (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).) Defendant contends that under this framework, Plaintiff "Pitts must establish that: (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) LSP either gave the promotion to someone outside of his protected class or otherwise failed to promote him because of his race." (*Id.* at 5 (citing *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 406 (5th Cir. 2021); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013);

*Fuhr v. City of Sherman, Texas*, No. 23-40116, 2023 WL 6518159, at *2 (5th Cir. Oct. 5, 2023).) Defendant argues that "[i]f Pitts successfully establishes a *prima facie* case, the burden then shifts to LSP to prove a legitimate, nondiscriminatory reason for failing to promote Pitts[,]" before shifting "back to Pitts to prove, by a preponderance of the evidence, that LSP's proffered reason was a mere pretext for racial discrimination." (*Id.* (citing *Fuhr*, 2023 WL 6518159, at *2; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).) Defendant "concedes that Pitts can establish a *prima facie* case of race discrimination[,]" but it maintains that his case still fails because, Defendant argues, "LSP had a legitimate, non-discriminatory reason for not promoting Pitts to each of the vacant major positions and Pitts has no evidence that LSP's reason was a pretext for race discrimination." (*Id.*) As its reasons for not promoting Plaintiff Pitts to the major positions for Region 2 and Region 3, Defendant asserts that "the promotion panel believed that the successful candidates were more qualified." (*Id.* at 6.) Defendant asserts that the captain promoted to major over Region 2, Darren Naquin, was a White man with over 29 years of total law enforcement experience and 10 years of experience serving as a captain, while the captain promoted to major over Region 3, Wayne Vidrine, was a White man with 27 years of law enforcement experience and had been serving as capital for over two years. (*Id.* at 7–8.) Defendant acknowledges that Plaintiff Pitts had a similar number of years of law enforcement experience as the successful candidates and had been serving as captain for over two years, but his captaincy had been over the recruiting section, "which is not a patrol unit[]" and involved supervision of "only one individual[.]" (*Id.* at 8.) According to Defendant, "[t]he promotional panel was concerned that this experience was not sufficient to prepare Pitts for a managerial role over two patrol units with multiple field offices and numerous personnel." (*Id.*) Defendant argues that "testimony from a decision-maker or interview panel member that the plaintiff was not as qualified as the successful candidate, constitutes a

legitimate, non-discriminatory reason for denying a promotion." (*Id.* at 9 (citing *Inocencio v. Montalvo*, 774 F. App'x 824, 831 (5th Cir. 2019)).)

In addition, Defendant contends that Plaintiff Pitts' claim for discrimination with respect to Defendant's failure "to promote him to the vacant position of major over Gaming and promoting Chuck McNeal, a white Captain, instead[]" is likewise meritless. (*Id.*) Defendant asserts that once again, Chuck McNeal, the White candidate selected, was more qualified due to a greater amount of "relevant experience[.]" (*Id.*) Defendant argues that although McNeal had fewer total years of experience in law enforcement, he had served as a captain and commander for longer, and he had more years of experience in the Gaming Section. (*Id.* at 11.) Defendant also contends that Plaintiff "did not perform well in his interview with the promotional panel," three of the four of whom were White. (*Id.* at 10–11.)

Defendant next addresses the pretext element of the *McDonnell Douglas* test, arguing that Plaintiff Pitts cannot show that Defendant's "proffered reasons for denying him the three promotions are a pretext for race discrimination." (*Id.* at 12.) Defendant argues that Plaintiff Pitts must show that he was clearly more qualified than the candidates who did obtain the positions. (*Id.* at 13 (citing *Burell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).) It asserts that Plaintiff Pitts was not clearly more qualified than the candidates who were promoted over him. (*Id.* at 14–18.) Defendant argues that mere subjective belief of greater qualifications is not enough, and the difference in qualifications between Plaintiff Pitts and the candidates who Defendant selected for the job was not so disparate that no reasonable employer would have selected those candidates over Plaintiff Pitts. (*Id.* at 18–19.) Defendant also contends that Plaintiff Pitts cannot point to any discriminatory behavior in his promotion process or in LSP's promotion policy. (*Id.* at 19.)

6

Defendant advances much the same arguments with respect to Plaintiff Childers. Although Defendant again concedes that Plaintiff "Childers can establish a *prima facie* case of race discrimination[,]" it argues that his failure to promote claims fail as a matter of law. (*Id.* at 22.) Defendant argues that many of Plaintiff Childers' denied promotions are time-barred, that "LSP had a legitimate, non-discriminatory reason for not promoting Childers to each of the five sergeant positions that are timely filed[,]" that Plaintiff Childers cannot show pretext, and that Plaintiff Childers cannot show that he was clearly better qualified than the candidates who were hired. (*Id.*)

First, Defendant notes that Plaintiff "Childers alleges he was passed over for promotion to 24 sergeant positions following his demotion from sergeant in August 2006." (*Id.*) It argues that these were each discrete discriminatory acts, and Plaintiff Childers did not file an EEOC charge until May 14, 2019, meaning that any acts that took place more than three-hundred days prior to May 14, 2019, are time-barred. (*Id.* at 23.) Defendant also argues that in the May 14, 2019, Charge of Discrimination, Plaintiff Childers only complained about five specific denials of promotion and is therefore limited to those five denials in this lawsuit. (*Id.*)

Next, Defendant argues that Plaintiff Childers concedes that he was not promoted to sergeant due to his "extensive disciplinary background[,]" which had previously caused him to be demoted from the rank of sergeant, rather than because of his race. (*Id.* at 24.)

Defendant then argues that it had a legitimate, non-discriminatory reason to promote another candidate—Jarrett Dobson, a White man—for the TESS-Weight Enforcement Sergeant position, pointing to the 24 years of total law enforcement experience, college credit hours, and 8 years and 11 months of experience in TESS that Dobson possessed. (*Id.* at 29.) Defendant contends that Plaintiff Childers has shown neither that this explanation is false, nor that Childers is clearly better qualified. (*Id.* at 30 (citing *Burell*, 482 F.3d at 412).) Defendant argues that Childers has

simply testified that "he believes he was clearly better qualified because he had more experience, felt like he was a good leader and communicator, he had more time on the job, and had some college credits." (*Id.*) Defendant asserts that this is a "self-serving opinion [that] is insufficient to defeat summary judgment." (*Id.*) Defendant notes that Plaintiff Childers had 26 years and 5 months of LSP experience, 11 of which were with Troop I; Childers had no experience with TESS, since his experience prior to Troop I was with Gaming/BOI. (*Id.* at 31.)

Despite Plaintiff Childers' prior experience with Troop I, Defendant also contends that it had a legitimate, non-discriminatory reason for not promoting him to sergeant in Troop I. (*Id.* at 32.) Plaintiff "Childers applied to two vacancy promotions for the rank of sergeant at Troop I[]" in November of 2018. (*Id.*) With respect to the first position, the candidate selected, Donald McFarlain, had over 22 years of law enforcement experience, all of which were at Troop I, "a bachelor's degree in criminal justice," and his only disciplinary history were "letters of reprimand for fleet crashes." (*Id.* at 35.) With respect to the second position, the candidate selected, Scott Verret, had over 21 years of law enforcement experience exclusively at Troop I and "had only minor disciplinary history for fleet crashes." (*Id.*) Defendant notes that Plaintiff Childers "had significant disciplinary history which included: (1) an 8-hour suspension; (2) a demotion from sergeant to master trooper; (3) another 8-hour suspension following his demotion; and (4) a temporary reduction in pay equal to 24 hours all for violating numerous LSP policies during his tenure as a LSP trooper." (*Id.* at 35–36.) Defendant asserts that Plaintiff Childers' disciplinary record raised concerns about his ability to effectively lead. (*Id.* at 36.) Finally, Defendant contends that Childers performed administrative rather than patrol work due to his own requests, demonstrating that he was not seriously interested in becoming a shift patrol sergeant. (*Id.*)

Defendant argues that all of these factors show legitimate, non-discriminatory reasons for selecting candidates other than Plaintiff Childers. (*Id.*)

In addition, Defendant argues that Plaintiff Childers has not shown and cannot show pretext. (*Id.* at 37.) It asserts that Childers cannot show that he was plainly more qualified than the two candidates who were hired as sergeants in Troop I, McFarlain and Verret. (*Id.*)

Likewise, Defendant argues that LSP has a legitimate, non-discriminatory reason for not promoting Plaintiff Childers to sergeant over Troop C. Defendant contends that the candidate who was ultimately promoted, Joshua Van Etta, was a White man who had over 25 years of law enforcement experience with 8 years in the Criminal Investigation Division ("CID"), 18 hours of college credit, training in investigations including homicide investigations and criminal investigative techniques, and no disciplinary history. (*Id.* at 41.) Defendant argues that Plaintiff Childers cannot show that he was clearly better qualified and that this was therefore pretextual. (*Id.* at 41–42.)

Defendant again argues that it has a legitimate, non-discriminatory reason for not promoting Plaintiff Childers to sergeant over Public Affairs. (*Id.* at 42.) The candidate who was ultimately hired, Melissa Matey, was a White woman who "had over 20 years of law enforcement experience, including over 9 years with Public Affairs performing similar duties," exceptional performance reviews, and a lack of disciplinary record. (*Id.* at 45.) Defendant also notes that the recommender had "personal experience and firsthand knowledge" with respect to the candidate's skills, indicating a prior relationship between the recommender and the candidate who was promoted. (*Id.*) Defendant contends that Plaintiff Childers cannot prove pretext, arguing that the recommender, Captain Slaton, had concerns about Plaintiff Childers' leadership abilities based on

prior interactions and that Childers cannot show that he was better qualified than the candidate who was ultimate promoted. (*Id.* at 46–47.)

Defendant also argues that its subjective interview process does not show any form of discrimination, particularly since Plaintiff Childers does not contend that any of the questions made him feel uncomfortable, nor that they led him to file any complaints. (*Id.* at 48.)

Defendant next asserts that although Plaintiff Childers alleges that "other white employees who have similar discipline as him were promoted to the rank of sergeant[,]" he has presented no evidence of such at the summary judgment stage. (*Id.* at 49.) It argues that he has also presented "no evidence of other African Americans who have been disciplined and were also denied promotions." (*Id.*) As such, Defendant argues that Childers cannot meet his summary judgment burden.

Defendant then proceeds to Plaintiff Pitts' retaliation claim, arguing that it too fails as a matter of law. (*Id.*) Defendant argues that Plaintiff Pitts stated in his deposition that his claim of retaliation is premised on a discussion that he had with Lieutenant Colonel ("LTC") Jay Oliphant, one of the promotion panel members, "in mid-July prior to the promotion panel interviews for the Region 2 and Region 3 major positions." (*Id.* at 49–50.) Defendant asserts that Pitts claimed that in his conversation with Oliphant, Oliphant referred to a "lawsuit" Pitts had previously filed— which Defendant claims did not exist. (*Id.* at 50.) Instead, Defendant argues, this refers only to an EEOC Charge Plaintiff Pitts filed in 2011. (*Id.*) Defendant claims that "Pitts did not complain about race discrimination in connection with the three major promotions to Oliphant or anyone at LSP." (*Id.* at 51.) Consequently, Defendant argues that Pitts did not engage in protected activity because he did not engage in actions falling under either the opposition clause or participation clause of Title VII. (*Id.* (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73

10

(5th Cir. 1998)).) Defendant argues that "Pitts does not fall within 'the participation clause' because he did not file an internal complaint relative to the denial of the major promotion during his employment at LSP and he did not file an EEOC Charge alleging a discriminatory denial of promotion to the position of major until after his employment with Defendant ended." (*Id.* at 52 (emphasis omitted).) Defendant asserts that the "seven-year lapse in time" between Plaintiff Pitts' 2011 EEOC Charge and his later denial of promotion "negates" any retaliation claim. (*Id.*) Defendant further argues that Plaintiff Pitts does not fall within the opposition clause because his conversation with Oliphant was not sufficient to alert his employer as to the alleged unlawful discrimination. (*Id.* at 53.)

Defendant further argues that Pitts' retaliation claim fails because he cannot show a causal link between the protected activity that he engaged in and the adverse employment activity, which would be the denied promotion. (*Id.* at 54.) Defendant again points to the 2011 EEOC Charge and argues that the seven-year lapse in time is too long to establish causation. (*Id.*) It also argues that, to the extent Pitts bases his retaliation claim on his 2018 conversation with Oliphant, his claims also fail because he has not provided any evidence that the final decisionmaker was aware of the conversation. (*Id.* at 55.)

In addition, Defendant contends, even if Pitts were able to meet his *prima facie* burden on his retaliation claim, Defendant is again able to provide a legitimate, non-retaliatory reason for its actions. (*Id.*) Defendant again points to its earlier arguments that it hired the alternative White candidates based on their qualifications. (*Id.* at 56.) Defendant notes that Plaintiff Pitts was not the only candidate denied a promotion, which it argues shows that there was non-retaliatory motive for denying Pitts, specifically, a promotion. (*Id.* at 56–57.) Consequently, Defendant argues, the Court should grant summary judgment.

B.      **Plaintiffs' Opposition**

a. *Plaintiff Childers*

In *Plaintiffs' Opposition*, Plaintiffs first address Childers' claim of racial discrimination. (Doc. 108 at 10.) They argue that since Defendant has conceded Plaintiff Childers' *prima facie* case of racial discrimination, "the only issues for Childers' Title VII failure to promote claim are (a) whether LSP has submitted a sufficient, legitimate non-discriminatory reason for denying Childers these promotions; and (b) whether Childers can show that genuine issues of material fact indicate that LSP's reasons for denying him promotions are pretextual." (*Id.* at 10–11 (citing *Smith v. Aaron's Inc.*, 325 F. Supp. 2d 716, 719 (E.D. La. 2004)).) Plaintiffs urge the Court not to consider Defendant's "purported reasons for denying Childers" the promotion for the TESS-Weight Enforcement division of LSP, arguing that Dobson, the selected candidate, was promoted contrary to LSP's own policies. (*Id.* at 11–12.) Plaintiffs argue that Dobson was ineligible for this promotion and that his selection therefore shows LSP's decision to "promote the pre-selected White candidate it desired and yet again deny Childers another promotion." (*Id.* at 12.)

In addition, Plaintiffs argue that "all of LSP's reasons for passing Childers up for the T[E]SS promotion are pretextual." (*Id.* at 13.) Plaintiffs argue that no documents that were created at the time of the promotion show "why Dobson was selected or why Childers was denied the promotion[,]" only those documents created in the course of litigation. (*Id.*) Plaintiffs assert that "[f]rom the time that LSP denied Childers the T[E]SS sergeant promotion, until sometime after this litigation commenced, the reasons indicating why Childers was passed up for this promotion provided only a vague reason *why Dobson was selected*." (*Id.* at 14.) Plaintiffs argue that Defendant did not provide any specific reasons for Dobson's promotion other than "his unidentified 'training, experience and job performance[,]'" and that, "more importantly," they did

not provide any reasons "why Childers was not selected." (*Id.* at 14–15.) Plaintiffs contend that even when asked in discovery to provide documentation showing why Childers was not promoted, Defendant produced only "Childers' and Dobson's IA summary forms containing their education, experience, training, PES rating, disciplinary actions, awards and commendations . . . ; the certificate of eligibles" showing which LSP employees "were eligible to further proceed in the promotion process . . . ; and show[ing] discipline Childers received from 2003 to 2010 . . . along with various awards, training, and commendations Childers received." (*Id.*) Plaintiffs maintain that these documents do not show "*why* Childers was *not selected*" or why Dobson was selected. (*Id.*) Consequently, they contend that any later reasons Defendant may have put forth for not promoting Childers does not reflect LSP's reasoning at the moment of its decision and is therefore pretextual. (*Id.* (citing *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237–38 (5th Cir. 2016)).)

Plaintiffs take issue with Defendant's reliance on the "clearly better qualified" standard to show pretext. (*Id.* at 16.) Plaintiffs argue that "qualifications evidence is not the only means to show pretext." (*Id.* (citing *Smith v. Equitrac Corp.*, 88 F. Supp. 2d 727, 735–36 (S.D. Tex. 2000); *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 319 (5th Cir. 2015)).) Plaintiffs argue that this is only one of multiple ways to show pretext. (*Id.*) For example, Plaintiffs assert that "a plaintiff can show pretext with evidence that the employer's purported *non-discriminatory reason is false, or* by showing that she was clearly better qualified than the selected candidate." (*Id.* (citing *McDaniel v. AMTRAK*, 705 F. App'x 240, 244–45 (5th Cir. 2017); *Patterson v. McLean Credit Union*, 491 U.S. 164, 187–88 (1989), *superseded on other grounds by* 42 U.S.C. § 1981(b)).) Plaintiffs argue that Childers must simply "'present enough evidence for a reasonable jury to believe that the employer's reasons are pretexts for unlawful discrimination.'" (*Id.* at 17 (quoting

*Lawson v. Excel Contractors, L.L.C.*, 2022 U.S. App. LEXIS 15241, at *8 (5th Cir. June 2, 2022))
(internal citation omitted).)

In addition, Plaintiffs argue that Defendant's reliance on the principle that a candidate who
was not promoted must have qualifications that "leap from the record" as more qualified is invalid.
(*Id.* (quoting *Shater v. Shell Oil Co.*, 2022 U.S. App. LEXIS 32737, at *4 (5th Cir. Nov. 28, 2022)).)
Plaintiffs claim that this stems from *Price v. Fed Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2022),
which was invalidated in *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). (*Id.*)

Furthermore, Plaintiffs argue that Childers had six years more experience at LSP than
Dobson, who was ultimately selected for the promotion, and that Dobson had never served in the
position of sergeant, unlike Childers. (*Id.* at 17–18.)

Next, Plaintiffs turn to the promotions to sergeant in Troop I, which Childers was again
denied. (*Id.* at 18.) They attest that Childers worked in Troop I from 2015 to 2016 and was rated
at exceeds expectations each year, which was only one level below the highest rating. (*Id.*) Despite
this, Plaintiffs contend, Defendant did not select Childers for a promotion to sergeant in December
of 2018 and instead promoted Verret, giving the same contemporaneous reasons in the Interview
Summary form as cited for Dobson—"training, experience and job performance." (*Id.*) On the
same day, Defendant LSP passed over Plaintiff Childers for another sergeant position in Troop I in
favor of McFarlain, again citing "training, experience and job performance." (*Id.*) According to
Plaintiffs, the Interview Summary forms include no other notations of significance other than
"LSP's provision of each candidate's race." (*Id.*)

Plaintiffs argue that the reasons Defendant has provided for not promoting Childers—
namely, his past disciplinary record, the fact that he wasn't performing patrol work at the time, the
fact that he was not an instructor, and McFarlain's experience with accident reconstruction—are

pretextual. (*Id.* at 19.) Plaintiffs assert that if an employer relies primarily on one dominant justification for an adverse employment action, and a plaintiff calls that justification into question, it may cast sufficient doubt on the others to withstand summary judgment. (*Id.* at 19 (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1127 (10th Cir. 2005); *May v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 484, at *18 (S.D. Ohio Jan. 5, 2007); *Powell v. Rumsfeld*, 42 F. App'x 856, 860 (7th Cir. 2002); *Fuentes v. Perskie*, 32 F.3d 759, 764 n.7 (3d Cir. 1994)).) Plaintiffs contend that there is a fact question as to Childers' experience with accident reconstruction and as to the extent to which his disciplinary record would inhibit his ability to testify in court. (*Id.* at 20–21, 23.) In addition, Plaintiffs argue that McFarlain received a very low score in his promotional interview, and that Childers scored higher than both McFarlain and Verrett. (*Id.* at 22.) In addition, Plaintiffs assert that Defendant's own witness, Troop Commander Eric Duplechain, contradicts himself in his deposition by stating that Childers was passed over for promotion because the candidates selected had more time on the job—and then stating that Childers had more time on the job, which Plaintiffs assert is the true statement. (*Id.*) As a result, Plaintiffs argue that the reasons given for denying Plaintiff Childers the Troop I promotion are pretextual.

Plaintiffs also contend that Childers had approximately thirteen years of patrol experience at the time that he sought the Troop I promotions, as well as over 26 years total experience in LSP, nearly five years of previous sergeant experience, five awards, and nearly two years of law enforcement experience outside of LSP. (*Id.* at 22–23.) Plaintiffs argue that this was more experience in some or all of these areas than McFarlain or Verret. (*Id.* at 23.)

Plaintiffs turn next to the position in Troop C, arguing that Defendant's reasons for passing over Plaintiff Childers for the promotion to sergeant in Troop C are pretextual. (*Id.* at 24.) They argue that the contemporaneous reasons given were the chosen candidate's "training, experience

and job performance[,]" as well as his lack of a disciplinary record. (*Id.*) However, the reasons given following this suit were the experience that the candidate, Van Etta, had in electronic imaging, Van Etta's work as a fatality crash investigator, his FBI certifications, and his work as a subject matter expert in criminal prosecutions. (*Id.*) Plaintiffs argue that these inconsistent responses give rise to an inference of pretext, in particular with respect to the question of whether Defendant was truly concerned at the time with Childers' ability to testify due to the possibility of being placed on a *Brady* list. (*Id.* at 25.)

Plaintiffs then address the promotion to the position of sergeant in the Public Affairs position. (*Id.*) They argue that Defendant's reasons for promoting Melissa Matey rather than Plaintiff Childers were again pretextual. (*Id.* at 25–26.) Again, they point to a discrepancy between the reasons Defendant gives in this suit and the reasons it gave previously, in this case in response to the EEOC charge Plaintiff filed. (*Id.* at 26.) The EEOC response focused on Matey's law enforcement experience, lack of disciplinary record, and again, her "training, experience and job performance." (*Id.*) Defendant's response to this suit, Plaintiffs argue, is far more in depth and addresses her relationship with Captain Slaton, her supervisory abilities, her law enforcement and public affairs experience, her PES ratings, her relationships with other outreach troopers, and again her lack of discipline. (*Id.* at 25.)

### b. *Plaintiff Pitts*

Plaintiffs likewise maintain that there are genuine issues of material fact as to Plaintiff Pitts' failure to promote claims. (*Id.* at 27.) They argue that since Defendant concedes Pitts' ability to establish a *prima facie* case of racial discrimination as to the three promotions he alleges were wrongfully denied, the issues that remain are "(a) whether LSP has submitted a sufficient,

legitimate non-discriminatory reason for denying Pitts 3 promotions; and (b) whether Pitts can show LSP's reasons are pretextual." (*Id.* (citing *Aaron's Inc.*, 325 F. Supp. 2d at 724).)

Plaintiffs first address the two promotions to the position of major in Regions 2 and 3. (*Id.*) Plaintiff Pitts was not selected for either of these positions: instead, Darren Naquin was promoted to major in Region 2, and Wayne Vidrine was promoted to major in Region 3. (*Id.*) Plaintiffs argue that Defendant's proffered reasons—that "the major in these positions would manage three (3) patrol units; and Pitts' only experience as a Captain or Commander was when he served as a Captain in the Recruiting Section supervising only one employee"—are pretextual. (*Id.*) First, they argue, "LSP previously denied Pitts a promotion to captain in Troop D preventing him from gaining more management experience of a patrol troop[.]" (*Id.*) Second, they argue that LSP falsely implied that Pitts had been subject to discipline for inappropriate behavior while the two candidates selected for promotion had not been, after denying that Pitts had ever been disciplined for inappropriate behavior. (*Id.* at 27–28.) Third, they argue that Defendant has never produced interview notes from Plaintiff Pitts' interview for these positions, which means that Plaintiffs cannot verify whether or not his interview presented any reason for him to be denied the promotion. (*Id.* at 28.)

Plaintiffs argue that "[a]n employer's proffered justification for its action may be shown to be pretextual if the employee is allegedly deficient because of the employer's own making." (*Id.* at 28 (citing *Smart v. Columbia Gas Sys. Serv. Corp.*, 41 FEP 249 (D. Del. 1986)).) Plaintiffs contend that Defendant LSP "placed Pitts in the position of Captain of the Recruiting Department, a newly formed position, that Pitts did not apply nor interview for around March 2016[,]" rather than promote him to Captain of Troop D, a position which would have required Pitts to supervise a patrol troop. (*Id.* at 28–29.)

17

Plaintiffs further argue that Pitts had more law enforcement experience than Vidrine, and that the promotional panels based their assessment of Pitts' and Vidrine's supervisory experiences on their personal experiences with the candidates rather than the factual records. (*Id.* at 29.) Plaintiffs contend that, contrary to Defendants' assertions, Pitts supervised upwards of ten troopers as a sergeant in patrol Troop E in the early 2000s, and as a lieutenant in Troop I from 2004–2016, he directed two sergeants in supervising approximately ten troopers. (*Id.*)

Next, Plaintiffs address Defendants' refusal to promote Pitts to the position of major in Gaming in region I. (*Id.*) Plaintiffs argue that the primary reason given was the experience that the selected candidate, McNeal, had with supervising subordinates. (*Id.*) Again, Plaintiffs contend that the Interview Summary Form cites only McNeal's training, experience, and job performance, as well as his race, and that Defendants have failed to produce any notes for their promotional interviews with Plaintiff Pitts. (*Id.* at 30.) However, Plaintiffs assert that Lieutenant Colonel ("LTC") Mike Noel, a member of the promotional panels, stated that panels relied on their personal experiences with McNeal in assessing his supervisory experience. (*Id.*) Plaintiffs again argue that Pitts had more experience than McNeal, showing pretext. (*Id.*)

Plaintiffs also argue that Plaintiff Pitts' retaliation claim survives. (*Id.* at 32.) They contend that he had a reasonable belief that he opposed activity prohibited by Title VII, permitting him to state a claim for retaliation under the opposition clause. (*Id.* at 33.) Plaintiffs assert that Pitts met this element by meeting with LTC Oliphant and meeting with State Representative Troy Carter. (*Id.*) They argue that the close temporal proximity between these meetings and LSP's denial of three promotions to Plaintiff Pitts shows causation. (*Id.* at 34–35.)

    *c. Statistics*

In addition to the above arguments, Plaintiffs include various statistics as evidence that Defendant LSP's failure to promote was pretextual. (*Id.* at 30–32.) In sum, they argue that Black employees were underrepresented at LSP and in leadership roles at LSP; that Black employees were selected at a statistically lower rate for promotions; and that LSP promoted White employees over Black employees. (*Id.* at 31–32.)

## C.    Defendant's Reply (Doc. 119)

In *Defendant's Reply*, Defendant largely reiterates its previous arguments.

### 1.    Plaintiff Pitts

First, Defendant argues that Plaintiff Pitts has failed to show a genuine issue of fact as to the promotions to major for Regions 2 and 3. (Doc. 119 at 2.) Defendant asserts that Plaintiffs have not presented any evidence that LSP, by not promoting Pitts to the position of Captain of Troop D, intentionally deprived Plaintiff Pitts of the managerial experience that the promotional panel was looking for in candidates for the position of major. (*Id.*) Defendant also argues that Pitts' disciplinary record was not a factor in the promotion decision, so any implications that may have been made about his disciplinary were irrelevant. (*Id.* at 5.) Defendant contends that it has presented sufficient evidence to support its legitimate, non-discriminatory reasons for promoting White candidates over Pitts. (*Id.*) It argues that "[c]ourts within the Fifth Circuit routinely rely on post hoc deposition testimony and affidavits as evidence to support the legitimate, non-discriminatory reasons for a promotion decision." (*Id.* at 6 (collecting cases).) It maintains that there are no notes from the interviews because the panel "did not use interview notes in making the decisions" of whom to promote. (*Id.* at 7.) In addition, Defendant claims that because one of the members of the promotion panel was Black, this "negates any inference of discriminatory motive." (*Id.* at 6–7 (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996)).)

Defendant next maintains that it has shown that the candidates selected for the positions of major were more qualified than Pitts, and that Pitts must show that he was "clearly more qualified," which requires more than mere years of experience. (*Id.* at 7–8.) At minimum, Defendant argues, Pitts' demonstration of comparable qualifications is not sufficient to overcome summary judgment. (*Id.* at 9.)

Likewise, Defendant asserts that Pitts has not shown that there is a genuine issue of material fact as to Defendant's failure to promote him to the position of Major over Gaming. (*Id.*) It argues again that Plaintiff Pitts must show that he is clearly more qualified than the candidate who was chosen, and that he has not done so. (*Id.* at 9–10.) Furthermore, Defendant argues, Pitts underperformed in the interview. (*Id.* at 10.)

2.    *Plaintiff Childers*

Defendant next turn to Childers, arguing that he too has failed to present genuine issues of material fact. (*Id.*) It argues that LSP has presented legitimate non-discriminatory reasons for promoting other candidates rather than Childers, and Childers' evidence of more years of service fails to demonstrate that he is more qualified. (*Id.*) Defendant claims that Childers has not presented any evidence to show that the final decisionmaker, Noel, "was motivated by discriminatory animus or that LSP's reasons are false." (*Id.* at 11.) It argues that with respect to the TESS sergeant position, LSP was authorized to include Dobson in its consideration for promotion due to another candidate's promotion to another position. (*Id.* at 11–12.) Defendant argues that Childers has presented no evidence to show that Dobson was a pre-selected candidate, nor that LSP has misrepresented how he came to be included for consideration. (*Id.* at 12–13.) LSP again refers to the "clearly better qualified" standard, which it contends that Childers cannot show. (*Id.* at 14.)

20

Likewise, Defendant argues that Childers cannot show pretext with respect to LSP's promotion of McFarlain and Verret, again pointing to the "clearly better qualified" standard. (*Id.* at 16.) It argues that Childers must refute each of the reasons LSP has given for not promoting Childers, and that he has failed to do so. (*Id.* at 17–18.) Defendant argues that Childers' time on the job does not equate to being better qualified, and he has therefore not shown that he is clearly better qualified. (*Id.* at 18–20.)

Defendant similarly argues that Childers has not shown pretext as to the position of sergeant at Troop C. (*Id.* at 21.) It contends that individuals involved in hiring Van Etta, the candidate ultimately selected for the position, have testified as to his qualifications, undermining Plaintiff Childers' argument that the Interview Summary Form contains insufficient information as to why Van Etta was promoted over Childers. (*Id.*) It also argues that in the Fifth Circuit, merely listing race on a form is not sufficient to show discriminatory intent without an explanation of how it was used or how it shows discriminatory intent. (*Id.* at 22.) Defendant argues that Childers' assertion that difference between the reasons given at the time he was passed over for a promotion and the reasons given in this suit show pretext is not supported by Fifth Circuit caselaw, which instead describes such reasons as additional. (*Id.* at 22 (citing *Bennett v. Consol. Gravity Drainage Dist. No. 1.*, 648 F. App'x 425, 431 (5th Cir. 2016)).) Defendant contends that the reasons it has given now for promoting Van Etta are consistent with the reasons given at the time of his promotion and in the EEOC response. (*Id.* at 23.) Consequently, it asserts that Childers has not shown pretext with respect to the Troop C promotion. (*Id.*)

Defendant then turns to Childers' claims as to the promotion for Sergeant of Public Affairs, asserting that he cannot refute LSP's legitimate reasons for promoting Matey over him. (*Id.*) Defendant claims that Childers advances the same arguments with respect to this promotion as he

does with respect to the Troop C promotion, "mainly that he had more experience than the chosen candidate, Melissa Matey, and that LSP's legitimate reasons are inconsistent with LSP's response to Childers' EEOC charge." (*Id.*) Defendant thus claims that Childers has, for the same reasons stated above, "failed to offer sufficient evidence that he was clearly better qualified and that LSP's reasons are false or unworthy of credence." (*Id.* at 23–24.) In addition, Defendant points to Matey's "exceptional qualifications" for the position, which they argue made her the best candidate. (*Id.* at 24.) Defendant argues that unlike Matey, Childers had no experience in Public Affairs and was therefore not clearly better qualified. (*Id.*)

Defendant next contends that Childers has not shown discriminatory motive on the part of LSP, arguing that in his deposition, Childers attributed LSP's failure to promote him to his disciplinary history rather than his race. (*Id.* at 25.) They further argue that all promotions that occurred before July 18, 2018, or after February 20, 2019, should be time-barred and not considered by the Court. (*Id.*)

### 3.    *Statistical Evidence*

In addition, Defendant argues that Plaintiffs' statistical evidence fails to show discriminatory intent. (*Id.* at 26.) It argues that the statistics are not reliable and that they fail to provide sufficient context. (*Id.* at 27–28.)

### 4.    *Plaintiff Pitts' Retaliation Claim*

Defendant then addresses Plaintiff Pitts' retaliation claim, arguing that he has not created a genuine issue of material fact because neither his meeting with LTC Oliphant nor with then-State Representative Carter is a sufficient form of protected activity. (*Id.* at 28.) In addition, Defendant contends that Plaintiffs failed to allege that Pitts met with Carter in his Original, First, and Second Amended Complaints, and in his charge of discrimination. (*Id.*) Defendant asserts that this meeting

did not put Plaintiff Pitts' employer on notice of his racial discrimination complaint. (*Id.* at 29, 30–31.) Defendant contends that even if Carter did contact Reeves, the final decisionmaker in these promotions, Plaintiff Pitts has not alleged that any part of Carter's conversation touched on race discrimination or any complaint Pitts may have made to Carter regarding race discrimination. (*Id.* at 32.) Defendant argues that there is no evidence that Plaintiff Pitts' employer was aware of any racial discrimination complaint or other protected activity. (*Id.*) The close temporal proximity is not sufficient to prove pretext, according to Defendant, who continues to assert that it has offered legitimate non-discriminatory reasons for not promoting Plaintiff Pitts. (*Id.* at 31.) Defendant contends that any claim of retaliation is based on no more than speculation on Pitts' part, and that his claims should therefore fail. (*Id.* at 32.)

## III. Legal Standards

### A. Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v.*

*Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.'" *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex Corp.*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.") (emphasis in original)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (quoting *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (internal quotation marks omitted)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (cleaned up). The non-mover's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (cleaned up).

Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (internal citation omitted).

In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (cleaned up).

**B.    Title VII**

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Title VII's prohibition against discrimination extends to protect against either 'a tangible employment action, such as a demotion or denial of promotion, or . . . a hostile or abusive working environment.'" *Johnson v. Bd. of Supervisors of La. State Univ.*, 90 F.4th 449, 455 (5th Cir. 2024) (citing *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 162 (5th Cir. 2007); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011)). "To establish a discrimination claim under Title VII . . ., a plaintiff must prove that he or she was subject to an 'adverse employment action[.]'" *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)).

"[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502–03 (5th Cir. 2023) (citing 42 U.S.C. § 2000e-2(a)(1); *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). While "the statutory phrase, 'terms, conditions, or privileges of employment,' is broad[,]" *id.* at 503, the Fifth Circuit has reiterated that Title VII "does not permit liability for de minimis workplace trifles[,]"

*id.* at 505 (citing *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021); *Chambers v. D.C.*, 35 F.4th 870, 883, 890 (D.C. Cir. 2022); *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 660 (7th Cir. 2005)).

        *1.*    *Retaliation*

        Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)); *see Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022). Where "a retaliation case is based on circumstantial evidence," courts "apply the *McDonnell Douglas* framework." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under that framework, "[t]o establish a prima facie case of retaliation, an employee must show '(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.'" *Saketkoo*, 31 F.4th at 1000 (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)) (cleaned up). "If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide 'a legitimate, non-discriminatory reason' for the adverse employment action." *Brown*, 969 F.3d at 577 (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). If the employer can establish a legitimate, non-discriminatory reason, the burden returns to the plaintiff "to prove that the proffered reason is pretextual." *Id.* "[T]he burden of persuasion remains with the employee throughout." *Saketkoo*, 31 F.4th at 1000.

26

IV.   ANALYSIS

A.   **Plaintiff Pitts**

   *1.   Plaintiff Pitts Cannot Show Pretext*

      *a.   Discriminatory Denial of Promotion*

In Count Two of the *Complaint*, Plaintiffs allege that Defendant LSP improperly denied Plaintiff Pitts three promotions to Major on the basis of race. (Doc. 49 at ¶¶ 91–95.) The three promotions at issue here are the promotions to major of Region 2, Region 3, and Gaming. (Doc. 92 at 1.) Defendant moves for summary judgment, arguing that Plaintiff Pitts has failed to carry his summary judgment burden on this count. (Doc. 92 at 2.)

"To establish a prima facie case of discrimination based on a failure-to-promote theory, a plaintiff must show that (1) he is a member of a protected class; (2) he sought and was qualified for a position for which applicants were being sought; (3) he was rejected for the position; and (4) the employer either (a) hired a person outside of the plaintiff's protected class, or (b) continued to seek applicants with the plaintiff's qualifications." *Johnson v. PRIDE Indus.*, 7 F.4th 392, 406 (5th Cir. 2021) (citing *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015)). If the plaintiff succeeds in establishing this *prima facie* case, then "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Id.* (citing *McMullin*, 782 F.3d at 258). "And if the employer satisfies this burden, the plaintiff must then provide adequate evidence to show the reason proffered by the employer is a mere pretext for unlawful discrimination." *Id.* (citing *McMullin*, 782 F.3d at 258). The Fifth Circuit has "long held that a defendant's shifting, inconsistent reasons for objectionable conduct can provide sufficient evidence of pretext." *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 704 (5th Cir. 2024) (citing *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002)). In addition, "'an employer's departure from

27

typical policies and procedures' can bolster an inference of pretext." *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 361 (5th Cir. 2017) (quoting *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 455 (5th Cir. 2013)).

Defendant LSP does not dispute that Plaintiff Pitts has established a *prima facie* case of discrimination on his failure-to-promote theory. (Doc. 93 at 5.) Instead, Defendant focuses on the latter part of the test, arguing that it has articulated legitimate, non-discriminatory reasons for not promoting Plaintiff Pitts and that Plaintiff Pitts cannot show that this was mere pretext. (*Id.*) As its legitimate, non-discriminatory reasons, Defendant argues that "the promotion panel believed that the successful candidates were more qualified." (*Id.* at 6.) In support, it points to the testimony from the promotional panel that they had concerns with Plaintiff Pitts' qualifications as opposed to those of the successful candidates, which Defendant contends constitutes a legitimate, non-discriminatory reason for denying the promotion. (*Id.* at 9.)

Plaintiffs, for their part, do not argue that the reasons Defendants give for promoting other candidates are not potentially legitimate reasons—however, they argue that in each instance, these reasons are pretext for racial discrimination. (Doc. 108 at 27, 30.) With respect to the promotions in Regions 2 and 3, Plaintiffs focus on Pitts' experience level, the role Defendant played in any lack of experience on Pitts' part, Pitts' lack of disciplinary record, and the alleged lack of interview notes from Pitts' interviews with the promotional panel. (Doc. 108 at 27–28.) With respect to the Gaming promotion, Plaintiffs again focus on Pitts' experience level. (*Id.* at 30.)

As a preliminary matter, the Fifth Circuit has not previously lent credence to arguments that the failure on an employer's part to fully document its decision-making process can give rise to claims of discrimination. *Ibanez v. Tex. A&M Univ. Kingsville*, 118 F.4th 677, 686 (5th Cir. 2024). As the Fifth Circuit has said, "it is difficult to see how [an employer]'s production of direct,

28

sworn testimony by the very people who made [the employee]'s [employment] decision—as opposed to other types of documentation—produces an inference of discrimination." *Id.* In *Alvarado v. Tex. Rangers*, the Fifth Circuit found that "[a]n employer's subjective reason for not selecting a candidate, such as a [clearly articulated] subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." 492 F.3d 605, 616 (5th Cir. 2007) (citing *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004); *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000)). This reliance on subjective assessments, however, requires "a clear and reasonably specific basis" for such assessment. *Id.*

Here, Defendant has provided interview records as well as affidavits and depositions of those involved in these promotions. (*See* Docs. 94-5, 94-8, 94-9, 94-10, 94-11, 94-12, 94-13, 94-14, 94-16, 94-17, 94-18, 94-19, 94-20, 94-21, 94-22, 94-23, 94-24.) Defendant argues that its basis for denying Pitts the promotion has remained consistent—other candidates were better qualified or more suited to the position, based on specific and identified factors that LSP relies upon in promotions. (Doc. 119 at 31.) Defendant's EEOC defense states that "[t]he factors considered for promotion include but are not necessarily limited to an applicant's law enforcement experience, military experience, education, work history to include proven effectiveness in promoting LSP's mission, background, individual skill sets, leadership experience, performance reviews and discipline history." (Doc. 108-18 at 10.)

At the time that he applied for the relevant promotions, Plaintiff Pitts had 28 years and 2 months of LSP experience. (Doc. 108-19 at 15.) Over 11 years of this had been with Troop I, one of the troops in Region 2. (*Id.*) He had no disciplinary actions. (*Id.*) Pitts had an Associate's Degree in Business Administration, and he had attended the Northwest University School of Police Staff

& Command. (Doc. 108-18 at 10.) However, his command experience was limited—although he had served in lower ranks such as sergeant and lieutenant, as a captain, Pitts had only had command over one individual, a lieutenant.[2] (*Id.*)

Naquin, who was promoted to major in Region 2, had 28 years and 6 months of LSP experience, as well as another year and 2 months with the Lafourche Parish Sheriff's Office; over 25 years of his LSP experience had been with Troop C, one of the troops in Region 2. (Doc. 108-19 at 14.) He had one eight-hour suspension from 2016 for "Department Records, Interaction with Offenders, Supervisor Responsibilities[.]" (*Id.*)

Vidrine, who was promoted to major in Region 3, had 24 years and 1 month of experience in LSP, in addition 2 years and 11 months of experience in the Evangeline Parish Sheriff's Office. (*Id.* at 17.) He had no disciplinary record. (*Id.*)

In the EEOC defense provided by Plaintiffs, Defendant states that McNeal, who was promoted to major of Gaming, had 23 years and 7 months of experience with LSP, over 8 years of which was in Gaming. (Doc. 108-18 at 12.) In addition, he had no disciplinary record, had graduated from FBI National Academy, and had a bachelor's degree in political science. (*Id.*) Captain Pitts not only lacked experience with Gaming, the promotional panel noted that he did not appear prepared for his interview and seemed unclear as to what the job would entail. (*Id.*) The Fifth Circuit has found that a candidate's performance in an interview can be a legitimate, non-discriminatory reason for not selecting them. *See Alvarado*, 492 F.3d at 616.

As per the affidavit of Kevin Reeves, who was Superintendent of LSP from March 25, 2017, to October 30, 2020, which includes the time of the promotions in question, the "promotional

---

[2] The LSP ranks are as follows: Cadet, Trooper, Master Trooper, Sergeant, Lieutenant, Captain, Major, Lieutenant Colonel and Colonel. (Doc. 108-18 at 10.) Although Cadet, Trooper, and Master Trooper are positions reached by time on the force, all other positions require promotions or appointments. (*Id.*)

panel is responsible for interviewing and then recommending for promotion a candidate from an eligibility list of qualified applicates." (Doc. 94-5 at ¶ 9.) However, Superintendent Reeves was responsible for making the final determination for promotion to major. (*Id.* at ¶ 11.) Reeves testifies that the promotional panel considered factors including but not limited to applicants' "law enforcement experience, military experience, education, work history, individual skill sets, leadership experience, performance reviews, and discipline history." (*Id.* at ¶ 12.)

Reeves attests that all applicants for the position of major in Regions 2 and 3 were asked the same questions in their interviews on July 25, 2018, with a promotional panel consisting of himself, LTC Noel, LTC Starnes, LTC Oliphant, LTC Barnum, and LTC White . (*Id.* at ¶¶ 18–19.) Reeves notes that following the interviews, "the promotional panel expressed general concern [ ] because Captain Pitts had never commanded a troop before and [ ] while serving in a commander's position, he had supervised only one person, a lieutenant." (*Id.* at ¶ 20.) On the other hand, the promotional panel unanimously recommended "then-Captain Darrin Naquin" because he "had 29 years and 8 months (28 years and 6 months with LSP) of total law enforcement experience, had a bachelor's and associate's degree, and [ ] he [had] graduated from the FBI Academy." (*Id.* at ¶ 21.) In addition, the promotional panel valued his ten years of experience as a troop commander and his interactions with "various criminal justice stakeholder[s] in this position." (*Id.*) Following the recommendation, Reeves promoted Naquin to Major of Region 2. (*Id.* at ¶ 23.)

Likewise, a promotional panel consisting of the same individuals unanimously recommended "then-Captain Wayne Vidrine" because he "had 27 years of total law enforcement experience (24 years and 11 months with LSP), and [ ] he had been serving as commander of Troop I for 2 years and 5 months." (*Id.* at ¶ 24.) He also had experience as a troop commander and criminal investigation experience, including interactions with criminal justice stakeholders. (*Id.*)

Again, following the panel's unanimous recommendation, Reeves testifies that he made the decision to promote Vidrine to Major of Region 3. (*Id.* at ¶ 25.)

Reeves testifies that a promotional panel was again empaneled approximately a month later, on August 23, 2018, to interview candidates for the position of Major of Gaming Enforcement/BOI. (*Id.* at ¶ 26.) This panel consisted of the same members as the previous promotional panel, with the exception of LTC Starnes, who was not a member of the August panel. (*Id.*) According to Reeves' testimony, Pitts did not appear to be fully prepared for his interview with the promotional panel or be prepared to handle the job as Gaming Major, due to his lack of prior experience with Gaming and his lack of prior experience supervising multiple troopers. (*Id.* at ¶ 27.) As a result, the panel did not recommend him for promotion, and instead recommended "[t]hen-Captain McNeal[,]" who "had 23 years and 7 months of LSP experience, with 4 years and 9 months as a captain[,]" as well as "a bachelor's degree in political science," had "graduated from the FBI academy, . . . and had extensive experience supporting public safety, homeland security, federal, state and local agencies by collecting, analyzing and disseminating information and intelligence data regarding criminal and terrorist activity." (*Id.* at ¶ 28.) In addition, McNeal had 8 years of experience in Gaming, all of which led the promotional panel to unanimously recommend him to the position of Major. (*Id.*) Reeves attests that he promoted McNeal following the unanimous recommendation. (*Id.* at ¶ 29.) Reeves testifies that he made the decision to not promote Plaintiff Pitts to each position of Major based on Pitts' limited experience and the mismatch between his qualifications and the sections to which he applied. (*Id.* at ¶ 31.) Reeves further states that Pitts never complained to him of race-based discrimination prior to filing his EEOC charge. (*Id.* at ¶ 32.)

Notably, LTC Noel stated in his deposition that Colonel Reeves had, upon assuming his position in 2017, put into place "a more formal process for promotion" because of prior complaints under his predecessors. (Doc. 97-12 at 21.) He testified that it was important to Colonel Reeves to have more structure in place in the promotional process, as evidenced by the interview process, interview summary forms, and IA forms that the promotional panel considered. (*Id.* at 21–23.) In his affidavit, Noel stated that the promotional panel considers a wide range of experience and history when reviewing a candidate. (Doc. 94-22 at ¶¶ 10–11.)

With respect to the Gaming position specifically, Noel expressed the importance of a major of Gaming having prior experience in Gaming due to the complex interplay of the gaming control board, the Attorney General's office, and the State Police in gaming regulation, as well as the turnover of both civilian and law enforcement staff. (Doc. 97-12 at 28–29.) He noted that while McNeal, who was chosen for this position, and another candidate both had Gaming experience, neither Plaintiff Pitts nor the fourth candidate did. (*Id.* at 29.) In addition, Noel focused on the supervisory experience of the candidates, expressing concerns about the fact that Pitts had never as a captain supervised a large number of candidates. (*Id.*) He also brought up the fact that Pitts, given the longevity of his tenure with LSP, was nearing retirement. (*Id.*)

Turning to Region 3, Noel again stated that his focus was on supervisory experience. (*Id.* at 37.) He testified that Vidrine, who was promoted to major of Region 3, had more supervisory and management experience, including with the troops he would be supervising as major of Region 3. (*Id.* at 37–38.) Plaintiffs express concern that this factor is not reflected in the IA forms or the interview notes. (Doc. 108 at 29.) Again, however, the Fifth Circuit has discounted these arguments when there is sworn testimony from those directly involved in the hiring or promotional process. *Ibanez*, 118 F.4th at 686.

33

In addition, Defendant has provided the declaration of Captain J. B. Slaton, who is currently with the Gaming division of LSP. (Doc. 94-12 at ¶ 1.) Slaton testifies that he was previously a in Public Affairs as a sergeant, lieutenant, and captain. (*Id.* at ¶ 2.) Slaton succeeded Plaintiff Pitts in the position of Captain of Public Affairs/Recruiting following Pitts' retirement. (*Id.* at ¶ 9.) Slaton attests that he was consequently familiar with the promotional process, both as an applicant, a recommender, and as a creator of the current IA Summary form. (*Id.* at ¶¶ 33–35.) Slaton stated that when he has been in a position to conduct interviews, his focus has been on experience and leadership qualities. (*Id.* at ¶¶ 19–21.) In addition, Slaton testified that Plaintiff Pitts was in fact promoted over him to the position of Captain of Recruiting in 2016, and that although Slaton, like Pitts, has applied to the position of major several times, he has not been promoted due to the "highly competitive[]" nature of the promotions. (*Id.* at ¶ 34.)

Defendant has produced substantial testimony from those involved in the promotions for Gaming and Regions 2 and 3, all of whom state that the primary focus for these positions was the candidates' experience—not just the total time on the job, but their relevant supervisory experience and experience with the tasks pertinent to the promotion. (*See* Docs. 94-5, 94-8, 94-9, 94-10, 94-11, 94-12, 94-18, 94-19, 94-22.) There are no inconsistencies between the generic "training, experience and job performance" cited to as a reason for promotion and the more specific, in-depth explanations of what types of training, experiences, or job performance the promotion panel was looking for. These reasons are not shifting, inconsistent, or contradictory. As one Fifth Circuit panel stated, "reasons for a termination that are merely 'additional,' and not contradictory, do not necessarily suggest pretext." *Bennett v. Consol. Gravity Drainage Dist. No. 1*, 648 F. App'x 425, 431 (5th Cir. 2016) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 238–39 (5th Cir. 2015)).

Plaintiff Pitts, furthermore, has not shown any different reasons given at different points in time, nor any departure from typical policies and procedures. He argues only he did, in fact, have more experience than the chosen candidates; that to the extent he had less experience, it was due to prior failures to promote; and that Defendants failed to keep proper notes that might have demonstrated pretext. Again, the Fifth Circuit has discounted arguments about the failure to keep proper notes where there is direct sworn testimony from the decisionmakers. *See Ibanez*, 118 F.4th at 686. Defendants have provided sworn testimony from decisionmakers explaining that "experience" and "training" refers not only to total time on the job but to specifics such as time spent in a supervisory capacity, number of individuals supervised, and time spent in the specific units candidates were applying to supervise. (*See, e.g.*, Doc. 94-14 at 5; Doc. 94-17 at 7–8, 10; Doc. 94-24 at 9–10.) Plaintiffs have not provided any support for the contention that this is mere pretext.

Nor have Plaintiffs provided any support for the contention that an employer, having not provided an employee with the conditions necessary to obtain a later promotion, is thereby discriminating against the employee or providing evidence of pretext. Plaintiffs cite only to an out-of-circuit case from 1986, in which the plaintiff provided evidence that her employer intentionally formulated job descriptors to favor male candidates and provided a male candidate (but not female candidates) with tax training to ensure he would be the only candidate qualified for the job. *Smart v. Columbia Gas Sys. Serv. Corp.*, Civil Action 84-732 CMW, 1986 U.S. Dist. LEXIS 23386 (D. Del. June 30, 1986). Setting aside the non-binding nature of this case, Plaintiff Pitts has provided no such evidence here. Instead, he states in his affidavit that the captain of recruiting position was created for him, promoting him to a position that had not previously existed, (Doc. 108-12 at ¶ 11), and that, according to LTC Noel, did not necessarily need to exist, (Doc. 97-12 at 25). Plaintiff has

provided no evidence that job descriptors were formulated to favor specific candidates, nor that some candidates were given special training in order to make them better applicants.

In sum, Defendant LSP has provided ample evidence that the promotional panel and Colonel Reeves selected Chuck McNeal, Wayne Vidrine, and Darren Naquin for the positions of Major over Gaming, Region 2, and Region 3 based on their specific job experience, training, and job performance. Plaintiff Pitts has not provided any specific evidence to show pretext, either in the form of shifting, inconsistent reasons for the denials of promotions or in the form of departures from typical polices and procedures.

b.    *Statistical Evidence*

Although Plaintiffs voluntarily dismissed their disparate impact claims, they present statistical evidence of disparate treatment that they argue proves pretext. (Doc. 108 at 30–32.) The Fifth Circuit has stated that "allegations of systemic racism within an institution—without more— are insufficient to carry [a plaintiff]'s burden to show individualized discriminatory treatment." *Ibanez*, 118 F.4th at 687 (citing *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992) (stating that "proof of pretext, hence of discriminatory *intent*, by statistics *alone* would be a challenging endeavor")).

Plaintiffs have attempted to provide statistical evidence to show that there is a disparate impact of racial discrimination with respect to promotions in LSP. (Doc. 108 at 31–32.) They assert that it shows pretext in Defendant's hiring and promotions. (*Id.*) However, Plaintiffs do not tie these statistics to the specific promotions that were denied to either Plaintiff Pitts or Plaintiff Childers. (*Id.*) Plaintiffs therefore fail to show *individualized* discriminatory treatment. *See Ibanez*, 118 F.4th at 687.

36

Furthermore, Plaintiffs' statistical evidence does not show the racial discrimination they allege with respect to promotions, the issue relevant to Plaintiffs. Plaintiffs present evidence that in 2018, 13 of the 102 Black applicants for promotions to "SGT" were selected. (Doc. 108 at 32.) This would mean that approximately 12.7% of the Black applicants were selected for promotions. In the same year, 48 of the 388 White applicants were selected, meaning that approximately 12.4% of the White applicants were selected for promotions. (*Id.*) Likewise, in 2019, Plaintiffs claim that of the 39 Black applicants, 5 were promoted, for a promotion rate of 12.8%. (*Id.*) Of the 173 White applicants, 21 were promoted, for a promotion rate of 12.1%. (*Id.*) While the comparatively lower number of Black applicants to White applicants might reveal underlying flaws in LSP's hiring, retention, or talent development, it does not show the disparate impact in promotions that Plaintiffs allege.

Plaintiffs assert that "of the five (5) promotions to major that LSP announced from 2018 to 2019, none of the three (3) black applicants who applied were selected, and LSP instead promoted only White applicants." (*Id.*) Plaintiffs do not provide the same statistical analysis for this assertion but instead cite to Defendant's discovery responses, which assert that in 2018, there were 3 Black applicants and 27 White applicants to the position of major. (Doc. 108-3 at 11–13.) These responses likewise assert that in 2019, there were zero Black applicants and zero White applicants for the position of major. (*Id.*) It does not note how many openings there were for the position of major, nor how many applicants there were of other races or ethnicities. (*Id.*) Zero Black applicants and six White applicants were selected in 2018. (*Id.* at 14.) This is a statistical difference; however, in 2016 and 2017, each of the Black applicants who applied for a position of major was selected. (*Id.* at 11–14.) On the other hand, in 2016 and 2017, four White applicants applied for a position of major and only one applicant was selected each year. (*Id.*) Over the three-year period, then, the

promotion rate for Black applicants was approximately 40%, while the promotion rate for White applicants was approximately 22%.

Plaintiffs' statistical evidence fails to show the racial discrimination in promotions that they allege. Again, it shows fewer Black applicants, which may point to flaws in LSP's hiring, retention, or application process—but the evidence does not show discrimination in promotions.

### 2.    *Plaintiff Pitts Cannot Show Retaliation*

"To establish a retaliation claim, [an] employee must show that: (1) she 'participated in an activity protected by Title VII;' (2) her 'employer took an adverse employment action against' her; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Wallace v. Performance Contrs., Inc.*, 57 F.4th 209, 224 (5th Cir. 2023) (quoting *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (internal quotation omitted)). "If the employee establishes a *prima facie* retaliation claim, 'the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.'" *Id.* (quoting *Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation omitted)).

The parties agree Plaintiff Pitts' retaliation claim relies upon two specific actions that Pitts took: first, a meeting with Oliphant after Pitts applied to the July 2018 promotions but before a decision had been made in those promotions; and second, a meeting with then-State Representative Troy Carter in June of 2018. (Doc. 108 at 33; Doc. 119 at 28.)[3] At issue is whether these conversations are sufficient to constitute protected activity under Title VII.

"An employee engages in protected activity when she opposes an employment practice that she 'reasonably believes' violated Title VII." *Wallace*, 57 F.4th at 224 (quoting *Badgerow v. Rej*

---

[3] Notably, Plaintiffs do not at any point raise as a factual matter the conversation that Defendant includes in its statement of material facts between Plaintiff Pitts and another trooper, in which the other trooper stated that Plaintiff was blackballed. (*See* 94-25 at ¶ 120.)

*Props.*, 974 F.3d 610, 619 (5th Cir. 2020)). "[S]tating one's belief that discrimination has occurred 'virtually always' constitutes opposition, except in 'eccentric cases.'" *Id.* (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276-77 (2009)). For example, "'[i]n a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices.'" *Saketkoo*, 31 F.4th at 1000 (quoting *Allen v. Envirogreen Landscape Prof'ls., Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017) (per curiam)). "A general allegation of hostility is not enough." *Id.* (citing *Allen*, 721 F. App'x at 326).

Plaintiff Pitts asserts that when he met with LTC Oliphant in July of 2018, he informed Oliphant that he "wanted a fair opportunity to compete for these promotions." (Doc. 108-12 at ¶ 21.) Plaintiff Pitts does not claim that he informed Oliphant that he believed he was being discriminated against on account of his race. (*Id.*) This conversation does not, therefore, "'refer[] to conduct that could plausibly be considered discriminatory in intent or effect[.]'" *Saketkoo*, 31 F.4th at 1000 (quoting *Allen*, 721 F. App'x at 326). The Fifth Circuit has previously found that "generic" statements do not form the basis of a retaliation claim absent an indication of a protected classification. *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 290 (5th Cir. 2020). This conversation with Oliphant cannot form the basis for a retaliation claim. Plaintiff Pitts cannot meet the first element of a *prima facie* case of retaliation based on this meeting.

Plaintiff Pitts also asserts that when he met with then-State Representative Troy Carter in June of 2018, he informed Carter "about a lack of minority LSP employees being promoted" and "discussed [his] qualifications, tenure, and law enforcement record with him." (Doc. 108-12 at ¶ 18.) On its face, Plaintiff's mention of "a lack of minority LSP employees being promoted" could be a reference to plausibly discriminatory conduct. (*Id.*) However, Plaintiff did not raise these

complaints to his employer, nor does he present any evidence that they were ever brought to his employer's attention. Instead, he raised them informally to a government official who had no formal power to impact Plaintiff's promotional prospects. Plaintiff claims that he "observed [Carter] telephone whom [he] understood to be Kevin Reeves[]" during their meeting, but he makes no assertions as to the topics discussed in that phone call or whether it did, in any way, alert his employer to potential discriminatory practices. (*Id.* at ¶ 19.) Plaintiff Pitts provides no evidence that his employer was ever made aware of his belief that there was "a lack of minority LSP employees being promoted" beyond his belief that Carter called Reeves, and again, he provides no evidence that this call in any way pertained to Plaintiff's claims of racial discrimination. (*See id.*) If an employer is unaware of an employee's assertions of discrimination, they cannot retaliate on the basis of those assertions. *Stingley*, 836 F. App'x at 290 (quoting *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000)). Absent any evidence that his employer was informed that he believed there was potential discriminatory conduct, Plaintiff Pitts has failed to establish a *prima facie* case of retaliation sufficient to survive summary judgment.

Even if Plaintiff Pitts had sufficiently established a *prima facie* case with respect to either of these two meetings, the burden would then shift to Defendant to show a legitimate, non-discriminatory reason for its decision not to promote Plaintiff. *See Wallace*, 57 F.4th at 224. As the Court has previously found, Defendant has articulated legitimate, non-discriminatory reasons for its decisions to not promote Plaintiff.

**B.    Plaintiff Childers**

1.    *Plaintiff Childers Cannot Show Pretext*

a.    *Denial of Promotion*

40

The same standards apply to Plaintiff Childers. Defendant again concedes that Plaintiff Childers can show a *prima facie* case of discrimination, but argues that it has shown legitimate, non-discriminatory reasons for promoting other candidates to each of the positions at issue. (Doc. 93-3 at 22.) Defendant argues that Plaintiff Childers cannot show that these reasons were pretextual. (*Id.*)

As a preliminary matter, Plaintiffs allege that Plaintiff Childers was denied approximately twenty-five[4] promotions after being demoted from sergeant to master trooper in 2006. (Doc. 108 at 2.) However, Plaintiffs concede that only five of these promotions are not time-barred. (*Id.* at 6.) Plaintiffs urge the Court to consider the time-barred denied promotions as context. (*Id.* at 6 n.6.)

The specific promotions at issue are the TESS promotion, for which Dobson was ultimately selected, (Doc. 93-3 at 23–34; Doc. 108 at 13); the two Troop I promotions, for which McFarlain and Verret were selected, (Doc. 93-3 at 24; Doc. 108 at 18); the Troop C promotion, for which Van Etta was selected, (Doc. 93-3 at 24; Doc. 108 at 24); and the Public Affairs promotion, for which Melissa Matey was selected, (Doc. 93-3 at 24; Doc. 108 at 25).

With respect to Plaintiff Childers, Defendant argues not only that it had legitimate, non-discriminatory reasons to promote the selected candidates, namely these candidates' experience and qualifications for the positions; it also argues that it had concerns with Childers' disciplinary record that led LSP to repeatedly select other candidates for promotion over Childers. (Doc. 93-3 at 24.) Plaintiffs provide no evidence that either Defendant's reasons for advancing other candidates or Defendant's concerns about Plaintiff Childers' disciplinary history are mere pretext.

---

[4] Again, there is some dispute as to whether this number is twenty-four or twenty-six.

Plaintiff Childers does not point to any shifting or contradictory explanations, nor any deviations from normal departmental policies or procedures.

Indeed, in the documents Plaintiffs submit in support of *Plaintiffs' Opposition*, they include the deposition of Wayne Vidrine, who testifies that when Childers asked Vidrine, then his indirect supervisor, for advice about why he had not yet been promoted to a higher rank, Vidrine pointed to his disciplinary record. (Doc. 108-9 at 30–31.) Vidrine states that he had informed Childers that there was an IA file on Childers that, due to the State Police's policy at the time on "what was listed as far as Brady cops go[]" and due to concerns about the chain of custody, "would explain to you the problems that he's having getting promoted at the Troop." (Doc. 108-9 at 31–33.) Instead, Vidrine advised Childers to try for a promotion to a position where he would not be expected to handle evidence. (*Id.* at 32, 52.) Vidrine further stated that he did not feel able to recommend Childers for a promotion due to Childers' past disciplinary record and prior demotion. (*Id.* at 35–36.) Although Vidrine was unaware of any specific prohibition on "Brady cops" holding specific supervisory positions, he testified that prior disciplinary history could present an issue in promotions that required handling evidence. (*Id.* at 57–58.)

Plaintiffs counter by pointing to the deposition testimony of Lieutenant James Flynn, who was Childers' shift supervisor in Troop I and stated that in the "pros and cons" assessment of Childers' work that Flynn provided to the promotional panel for the TESS Weight promotion, "there were never any cons." (Doc. 108-13 at 23.) However, Flynn explicitly stated that he did not have access to Childers' IA files and did not know why Childers had been previously demoted. (*Id.* at 24–25.) As a result, Flynn did not know how Childers' disciplinary record might influence the promotional panel, as he acknowledged in his deposition testimony. (*Id.* at 25.) Flynn stated that, in his opinion, Childers "was being punished for the demotion[.]" (*Id.* at 35.) Flynn stated

that he knew of other individuals who had been demoted and then "re-promoted at some point in their career," but that he was unaware of any specific facts, disciplinary records, or offenses. (*Id.* at 51.) In addition, Flynn was able to name off the top of his head several Black troopers who had been promoted to sergeant in recent years, although he acknowledged that he did not know any ratios or numbers. (*Id.* at 55–57.)

In addition, Plaintiffs point to the deposition testimony of Troop Commander Eric Duplechain, who testified that he had, at one point, supervised Plaintiff Childers in Troop I. (Doc. 108-14 at 16.) Duplechain, like Vidrine and Flynn, pointed to Childers' disciplinary record and prior demotion. (*Id.* at 23–24.) Duplechain stated that, while Childers was under his supervision, Childers did handle or receive evidence via the LSP's "Chain Link" system, but that he did not recall Childers ever being called to testify. (*Id.* at 26–27.) Duplechain stated that, after a discussion with Vidrine about Childers' disciplinary history, he reflected that placing Plaintiff Childers in this position may have had "[t]he potential to cause some serious embarrassment to the department[.]" (*Id.* at 27.) When asked if he knew why Childers had been placed in an administrative position with Troop I, Duplechain stated that his understanding had been that Childers "couldn't work night shift because he was having trouble sleeping" and had therefore been placed in an administrative role. (*Id.* at 43.) With respect to the specific promotions at issue, Duplechain testified that although he had ranked McFarlain's interview at a ten, Verret's interview at a seventeen, and Childers' interview at an eighteen, he recommended McFarlain and Verret rather than Childers for promotions. (*Id.* at 47–50, 54–55.) Duplechain testified that his reasons for doing so were McFarlain and Verret's time on the job, training, and minimal disciplinary record. (*Id.* at 55.) Duplechain repeatedly reiterated the disparity in the disciplinary records as influencing his recommendations for McFarlain and Verret over Childers. (*Id.* at 61.)

43

Likewise, in his affidavit, Duplechain pointed to McFarlain and Verret's time on the job, patrol experience, and specialized skills as reasons he recommended them for promotions. (Doc. 97-10 at ¶¶ 26–29.) In addition, he expressed concerns about Childers' disciplinary record. (*Id.* at ¶ 25.)

Lieutenant Eric Burson testified in his deposition that while he supervised Childers, then a trooper in Troop E, he was unaware of any reason why Childers would be unable to testify and that he did in fact trust Childers to testify. (Doc. 108-15 at 26–28.) Burson stated that he had no recollection of any conversations with Childers or anyone else in the department about the promotion process. (*Id.* at 32–36.)

Plaintiffs themselves have submitted LSP records for the promotions to which Plaintiffs applied. With respect to the TESS position, Plaintiff Childers' list of disciplinary actions is far more extensive than that of the successful candidates, Dobson. (*Compare* Doc. 108-16 at 23 to Doc. 108-16 at 25.) In addition, his disciplinary record is more serious—it includes a 2003 suspension for "Conformance to Laws (Simple Battery)[,]" a 2006 demotion for "Conformance to Laws; False Statements; Reporting for Duty; Neglect of Duty; Unsatisfactory Performance; Vehicle Usage Limitations and Requirements; Vehicle Off-Duty Use; Regulations Governing Secondary Employment; Prohibitions; Conduct Unbecoming an Officer[,]" a 2006 suspension for a fleet crash, and a 2010 temporary pay reduction for "Badge of Office; Conformance to Laws[.]" (*Id.* at 23.) On the other hand, Dobson, who was promoted, had two suspensions from 2002 and 2004 for fleet crashes and a letter of reprimand from 2016 for use of department equipment. (*Id.* at 25.) Plaintiffs argue that Dobson should never have been considered for the position; however, Defendant has provided evidence that when an eligible candidate is promoted, a replacement

candidate from a lower "grade group" is added to the list of eligible candidates. (Doc. 94-19 at 5–6.) Plaintiff Childers has presented no evidence that this is incorrect or pretextual.

For the two Troop I promotions, Plaintiff Childers' disciplinary record remained the same. (Doc. 108-16 at 39, 52.) McFarlain, who was selected for one of the two positions, had only two letters of reprimand from 1997 and 2015 for fleet crashes. (*Id.* at 32, 45.) Verret had a temporary reduction of pay from 2008 and a sixteen-hour suspension from 2012, both for fleet crashes. (*Id.* at 37, 50.)

For the Troop C promotion, Plaintiff Childers' disciplinary record remained the same. (*Id.* at 61, 67.) On the other hand, Van Etta, who was promoted, had no disciplinary record. (*Id.* at 69.)

For the Public Affairs promotion, Plaintiff Childers' disciplinary record again remained the same. (*Id.* at 91.) Matey, who was promoted, had no disciplinary record. (*Id.* at 89.) In addition, Captain Slaton, a member of the promotional panel for the position of sergeant of Public Affairs, testified that in addition to prioritizing relevant experiences, he "needed a sergeant who exemplified trustworthiness, was reliable and that other troopers and the community would respect." (Doc. 94-12 at ¶ 27.) Slaton expressed concerns with Childers' "serious disciplinary history" that "did call into question his leadership and supervisory skills." (*Id.* at ¶ 30.)

Defendant has provided deposition testimony from multiple members of the promotional panels, the final decisionmaker, and Childers' direct supervisor, all expressing concerns about Childers' disciplinary record. While one individual who was not a member of the promotional panel stated that he trusted Plaintiff Childers to testify, multiple members of the promotional panel testified that they were concerned with the impact that Plaintiff Childers' disciplinary record would have on his ability to perform all of the duties associated with the role of sergeant. Defendant LSP has argued that it did not promote Plaintiff Childers because there were other candidates who had

45

more applicable experience or qualifications and because Plaintiff Childers had a significant disciplinary record that raised concerns for the promotional panel. (Doc. 93-3 at 24–48.) The onus thus falls on Plaintiff Childers to show that these reasons are pretext; Plaintiff Childers has not done so. Indeed, Childers has provided documentary support for Defendant's contention that a) he had a more extensive and serious disciplinary record than the candidates ultimately hired and b) that this record was concerning to members of the promotional panel. Plaintiffs have not produced any evidence to support the allegation that Plaintiff Childers was not selected for these positions on account of his race. Instead, Plaintiff Childers has submitted deposition testimony from Flynn, who stated that he believed Childers "was being punished" for his previous demotion. (Doc. 108-13 at 35.) It is, of course, entirely possible that Flynn was correct. But Title VII prevents racial discrimination. It does not prevent employers from deciding that a law enforcement officer who has exercised poor judgment resulting in discipline not once, not twice, but four times over the course of seven years—including for actions that could have resulted in criminal charges—should not advance to certain levels of command. In the absence of evidence that this was mere pretext, Plaintiff Childers' racial discrimination claim fails.

2.    <em>Statistical Evidence</em>

For the reasons stated above with respect to Plaintiff Pitts, Plaintiffs' statistical evidence fails to show any racial discrimination in promotions, particularly with respect to the promotions to sergeant. Consequently, Plaintiff Childers' statistical disparate impact claim, like Plaintiff Pitts' analogous claim, fails.

Although Defendant has conceded that Plaintiffs are able to show a *prima facie* case of discrimination, it has shown legitimate non-discriminatory reasons for denying promotions to both Plaintiff Pitts and Plaintiff Childers, and both Plaintiff Pitts and Plaintiff Childers have failed to

show any evidence of pretext. In addition, Plaintiff Pitt cannot establish a retaliation claim where he has not presented the Court with any basis to believe that his employer was aware of his discrimination claims prior to the failure to promote. Finally, the statistical evidence Plaintiffs have presented do not support their allegations of racial discrimination in promotions and cannot, therefore, be used to support a showing pretext.

## V.   CONCLUSION

Accordingly, Defendant's *Motion for Summary Judgment* (Doc. 92) is **GRANTED.** Plaintiff's *Second Amended and Supplemental Complaint* (Doc. 49) is **DISMISSED.**

Signed in Baton Rouge, Louisiana, on <u>June 16, 2025</u>.


**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**